## EX PARTE RAYBURN MORRIS.

No. 18595.   Delivered November 12, 1936.
Rehearing Denied January 27, 1937.

The opinion states the case.

*Cox & Cox,* of Sherman, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—This is an appeal from an order of the Hon. R. M. Carter, Judge of the District Court of the fifteenth Judicial District of Texas, remanding appellant to the custody of Cap Duncan, the designated agent of the State of Oklahoma, to remove him to said state.

The record shows that on the 13th day of March, A. D., 1936, the Governor of the State of Texas honored a requisition from the Governor of the State of Oklahoma for the return of the appellant to said state. The Governor of the State of Texas issued his executive warrant and delivered it to Cap Duncan, the duly designated and authorized agent of the demanding state, to take appellant into custody and remove him to said state. It seems that the proceedings were regular as no attack is made upon the requisition, the executive warrant, or the complaint charging appellant with having committed the offense of robbery by the use of firearms, which is a felony under the laws of the demanding state and for which it is sought to extradite him. Upon being taken into custody by virtue of the executive warrant, appellant applied to the Hon. R. M. Carter, Judge of the District Court of the Fifteenth Judicial District of Texas, for a writ of habeas corpus and prayed that upon the hearing thereof he be discharged for the following reasons: first, because he was not in the State of Oklahoma at the time

of the commission of the offense with which he is charged; and second, that he was not a fugitive from justice of the demanding state. The writ of habeas corpus was issued as prayed for, and at the hearing thereof the court heard evidence at the conclusion of which he remanded appellant to the custody of the agent of the demanding state to be conveyed to said state in accordance with the executive warrant. Appellant excepted to the ruling of the court, gave notice of appeal and brought this case to this court for review.

The question as to whether appellant was in the state of Oklahoma at the time of the commission of the alleged offense was a controverted issue which was determined by the trial court adversely to appellant's contention and his judgment is binding upon this court.

Hence, the only question to be considered is: Was appellant a fugitive from the justice of the demanding state?

The conclusion which we have reached is based upon the following uncontroverted facts: Appellant was convicted in March, 1933, in the District Court of Fannin County, Texas, for the unlawful transportation of intoxicating liquors, from which judgment he appealed to this court. Pending said appeal he, together with Bill Horne and Malcolm Keene, was charged with murder alleged to have been committed by them in the County of Choctaw, State of Oklahoma, on October 5, 1933. Appellant and his co-defendants were arrested and placed in jail in Hugo, in said state. Their trial was set for February 16, 1934, at which time the case against appellant and Horne was dismissed, but he was immediately charged with subornation of perjury and held in confinement. In the meantime this court affirmed the judgment of his conviction in this state. At a subsequent day, when his attorney, who lived at Bonham, Texas, went to Hugo, Oklahoma, to represent the appellant upon his trial there, the sheriff of Fannin County requested the attorney to bring his client (appellant) back to Texas after his case was disposed of in said state.

The record is silent as to what disposition was made of the case then pending against appellant in Oklahoma, but the Oklahoma authorities were unwilling to release him and permit him to come to Texas until he had entered into an agreement to return to the State of Oklahoma after he had served the sentence imposed upon him by the courts of Texas. He also waived extradition. This agreement was reduced to writing and signed by appellant, whereupon he was released. Thereafter, on the 26th day of February, 1936, appellant was charged

by complaint with having committed the offense of robbery by the use of firearms in the County of Choctaw, State of Oklahoma, on or about the 5th day of October, 1934. After appellant had been released from the penitentiary of the State of Texas he failed to return to the State of Oklahoma. Hence the extradition proceedings were instituted. Therefore, the question is presented: Was he a fugitive from justice within the purview of Section 2 of Article 4 of the Constitution of the United States? He obtained his release from custody of the demanding state by agreeing to return to that state after he had served his sentence in Texas. He was then in the same situation as if he had been released on his own recognizance. Having waived extradition, his departure from the State of Oklahoma and his return to Texas was voluntary. He was not forced to leave Oklahoma and come to Texas; neither was he taken from said state by legal proceedings. Hence, he might have gone where he pleased. Therefore, when he declined to return to said state after he had been released from the penitentiary of the State of Texas, he became a fugitive from justice within the meaning of Section 2 of Article 4 of the Federal Constitution. See State v. Brown, 64 S. W. (2d) 841; Grogan v. Welch, 67 A. L. R., 1474.

In the case of Chase v. State, 113 So., 103, the Supreme Court of Florida said:

"A person charged by indictment or by affidavit before a magistrate with the commission within a state of crime against its laws, and who after the date of such crime leaves the state, becomes from the time of such leaving a fugitive from justice within the meaning of the federal constitution and laws concerning extradition, no matter for what purpose or with what motive or under what belief he leaves the state and even though at the time of leaving the demanding state he had no belief that he had violated its criminal laws and did not consciously flee from justice in order to avoid prosecution for the crime with which he is charged."

We are of the opinion that under the state of facts disclosed by this record and the authorities cited in support of the conclusion reached by us, the appellant is a fugitive from justice. Appellant also contends that since the officers of the demanding state had failed to institute criminal proceedings against him at an earlier date, that they had waived their right to proceed against him and to extradite him. The offense with which appellant was charged was not barred by limitation and whether or not the facts as established at the hearing were sufficient to

justify the authorities in delaying the prosecution was a question of fact which the judge determined adversely to the appellant and is binding on this court.

It is therefore ordered that the judgment of the trial court be, and the same is, in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion for rehearing appellant challenges the correctness of the following statement in our original opinion, to-wit:

"It seems that the proceedings were regular as no attack is made upon the requisition, the executive warrant, or the complaint charging appellant with having committed the offense of robbery by the use of firearms," etc.

He points out no irregularity, but insists that inasmuch as the complaint which was offered in evidence charged him with having committed the offense of robbery by the use of firearms in the County of Choctaw and State of Oklahoma on or about the 5th day of October, 1934, and the uncontradicted testimony shows that the alleged offense was committed on or about the 5th day of October, 1933, that no legal authority existed for the issuance of the extradition warrant, and that the executive warrant issued in pursuance of the demand by the Governor of Oklahoma based upon such complaint was void. We cannot agree with him. The documents upon their faces appear to be regular. The fact that the complaint charged that the appellant committed the offense on or about the 5th day of October, 1934, when in truth and in fact it was committed on or about the 5th day of October, 1933, would not vitiate the proceedings, nor show any irregularity therein. Appellant admits, however, that he was in the demanding state at the alleged time of the commission of the offense, to-wit: October 5, 1933. Inasmuch as the offense, if of either date, was not barred by the statute of limitations, it seems to us to be immaterial whether the date charged be the true date or not, so long as it is made to appear that the offense was committed anterior to the time of the presentment of an indictment or the filing of a complaint.

Appellant has directed our attention to what he contends is an erroneous statement in our opinion in which we said:

"The question as to whether appellant was in the State of Oklahoma at the time of the commission of the alleged offense, was a controverted issue," etc.

Even if it be conceded that the uncontradicted testimony shows that appellant was not in the State of Oklahoma on the 5th day of October, 1934, as charged in the complaint, yet it is equally uncontradicted that he was in said state on October 5, 1933, at the time the alleged offense was in fact committed. However, we do not regard the difference between the time of the commission of the offense as charged in the complaint and the actual time of the commission of the offense as proven by the uncontradicted testimony of any importance or as a controlling fact in our decision. There being no question of limitation the statement of an incorrect date in the complaint is not material, as long as the date on which the offense is alleged to have been committed is anterior to the return of the indictment or the filing of the complaint, as hereinabove stated by us.

Appellant requests us to decide whether or not F. A. Dale, with whom appellant returned to the State of Texas, was a de facto officer. We do not deem it necessary to decide this question because F. A. Dale had no warrant which authorized him to take appellant in charge and bring him from the State of Oklahoma to the State of Texas. If appellant had declined to come willingly, Dale might not have had any legal authority to forcibly take him from said state and bring him to Texas. Hence appellant's act in leaving Oklahoma and coming to Texas with his lawyer, the said Mr. Dale, was a voluntary act on his part. If, however, we understand appellant's contention correctly, he takes the position that since the authorities of the State of Oklahoma released him and permitted him to accompany his said lawyer from the State of Oklahoma to the State of Texas where he was delivered to the Sheriff of Fannin County, and then taken to the state penitentiary where he served his sentence, he would not be a fugitive from justice. While the authorities on this question are not entirely uniform, yet it appears that the weight of authority is against appellant's contention.

In the case of Roberts v. Reilly, 116 U. S., 80, the Supreme Court of the United States said:

"To be a fugitive from justice, in the sense of the Act of Congress regulating the subject under consideration, it is not necessary that the party charged should have left the state in which the crime is alleged to have been committed, after an

indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply that, having within a state committed that which by its laws constitutes a crime, when he is sought to be subjected to its criminal process to answer for his offense, he has left its jurisdiction and is found within the territory of another."

In the case of Bassing v. Cady, 208 U. S., 386, Bassing was charged by indictment with the crime of grand larceny, alleged to have been committed on the 6th day of February, 1907, and on the 14th of March of that year the Governor of New York made his requisition to the Governor of Rhode Island for the arrest of Bassing as a fugitive from justice. The requisition was honored by the Governor of Rhode Island and Bassing was taken to New York. He was there arraigned and pleaded to the indictment. After one or two continuances the district attorney moved to dismiss the indictment, stating orally, as a reason for his action, that he did not have sufficient evidence to hold the accused. The motion was sustained and Bassing returned to Rhode Island without any objection on the part of the New York authorities. Shortly thereafter a second indictment was found in the New York court against Bassing for the same offense as charged in the former indictment, and this was the basis of the second requisition upon the Governor of Rhode Island on the 14th of June, 1907. Upon the requisition, the Governor of Rhode Island issued the warrant of arrest of which Bassing complained in his petition for a writ of habeas corpus. In that case as in the case under consideration Bassing took the position that he was not a fugitive from justice, but the court held that he was none the less such fugitive within the meaning of the Constitution and laws of the United States, because after the dismissal of the first indictment he left New York and returned to Rhode Island with knowledge of and without objection by the New York authorities.

In the case of Illinois Ex Rel McNichols v. Pease, 207 U. S., 105, the Supreme Court of the United States said:

"A person charged with crime against the laws of a state, and who flees from justice, that is, after committing the crime leaves the state, in whatever way or for whatever reason, and is found in another state, may, under the authority of the Constitution and the laws of the United States, be brought back to the state in which he stands charged with the crime, to be there dealt with according to law."

See Innes v. Tobin, 240 U. S., 127.

We have reached the conclusion that our original opinion

was correct. It is therefore ordered that the appellant's motion for rehearing be overruled.

*Overruled.*